RICHARD MARTIN, Appellant, v PETER A. CASAGRANDE, Respondent, et al., Defendants. (Appeal No. 1.)

Fourth Department, July 13, 1990

### APPEARANCES OF COUNSEL

*Julien & Schlesinger (William Fireman* of counsel), for appellant.

*Gibson, McAskill & Crosby (James McAskill* of counsel), for respondent.

### OPINION OF THE COURT

GREEN, J.

■ The central issue presented on this appeal is whether an employee whose injury has been determined to be compensable by the Workers' Compensation Board and who has accepted workers' compensation benefits is barred from bringing a direct action for intentional tort against his employer. We hold that, under such circumstances, workers' compensation is the employee's exclusive remedy.

Richard Martin, a former professional hockey player with the Buffalo Sabres, brought an action against the Sabres, Sabres General Manager Scotty Bowman and team doctor Peter Casagrande for damages resulting from a knee injury he sustained on November 9, 1980 in a collision with an opposing goaltender during a home game. Martin was immediately examined by Dr. Casagrande, the Sabres team physician and an orthopedic specialist for over 30 years. He found no evidence of swelling or fracture and made a preliminary diagnosis of a sprained knee due to hyperextension.

Martin missed 20 consecutive games and returned to the ice on December 28, 1980, approximately seven weeks after the

injury. Dr. Casagrande performed arthroscopic surgery on January 2, 1981. No ligament or meniscal damage was discovered during the surgery. Martin played in eight games between January 7 to 21, 1981. After January 21, 1981, Martin never played professional hockey again for the Buffalo Sabres.

On February 3, 1981, Dr. Jackson, a Canadian surgeon whom Martin contacted for a second opinion at the suggestion of Bowman and Dr. Casagrande, performed arthroscopic surgery and discovered two tears of the lateral meniscus, fractured cartilage and other debris not previously discovered or diagnosed. Dr. Jackson predicted that Martin could resume play in 4 to 5 weeks. Martin began skating again on February 18th but the Sabres did not play him and traded him to the Los Angeles Kings on March 10, 1981. Martin played sparingly and retired the following season.

Martin commenced two separate actions, later consolidated. These actions charge the various defendants with failing to discover the ligament and meniscal damage later found by Dr. Jackson. In a fourth cause of action, Martin alleges that Dr. Casagrande intentionally concealed the risks and true condition of his right knee; in a fifth cause of action, Martin alleges that all defendants intentionally conspired to play him despite knowing that he was physically unable to play.

In March 1988, the Sabres and Bowman moved for summary judgment on the ground that workers' compensation was Martin's exclusive remedy. In granting those defendants summary judgment, the court held that Martin was an employee of the Sabres and that plaintiff did not meet his burden of establishing defendants' intentional tortious conduct to avoid the exclusivity of workers' compensation.

In January 1989, defendant Dr. Casagrande moved for summary judgment dismissing the fourth and fifth causes of action on the ground that plaintiff's allegations against the doctor were no more viable than his previously dismissed allegations against the Sabres and Bowman. The court agreed and granted the motion, finding no evidence of Dr. Casagrande's fraud or concealment.

We affirm, but for reasons other than those relied upon by Supreme Court. The Workers' Compensation Board determined that Martin's injury was compensable finding "[a]ccident, notice and causal relationship established to right leg. Reimburse employer". The Sabres paid Martin his normal salary for the periods he was unable to play and subsequently

received partial reimbursement at the compensation rate. This is plaintiff's exclusive remedy *(Murray v City of New York,* 43 NY2d 400, 407, *rearg dismissed* 45 NY2d 966; *O'Rourke v Long,* 41 NY2d 219, 225-226). Since the Workers' Compensation Board determined that Martin's injury was accidental and occurred during the course of his employment, Martin is prohibited by res judicata from pursuing an intentional tort claim *(Mylroie v GAF Corp.,* 55 NY2d 893, 894; *Werner v State of New York,* 53 NY2d 346, 352-355). Where "the right to sue the employer has been stripped away by workmen's compensation coverage, it is an arrogation of jurisdiction to consider a tort complaint on its merits" *(O'Rourke v Long,* 41 NY2d 219, 221, *supra).* Here, the Workers' Compensation Board determined that plaintiff's injury was compensable and plaintiff did not appeal from, or move to vacate, that determination and accepted workers' compensation benefits. This award acts as a bar to plaintiff's direct action for intentional tort *(see, Cunningham v State of New York,* 60 NY2d 248, 252-253; *O'Connor v Midiria,* 55 NY2d 538, 541; *Ronecker v Consolidated Rail Corp.,* 133 AD2d 531, 532, *lv dismissed* 70 NY2d 951).

Plaintiff seeks to avoid the exclusivity bar of workers' compensation by arguing that he was not an employee of the Sabres. Since the Workers' Compensation Board found plaintiff's injury compensable and ordered reimbursement to plaintiff's employer (the Sabres), plaintiff is barred from now arguing that he was not an employee of the Sabres at the time of the accident causing his injury *(O'Connor v Midiria, supra).* The conclusiveness of the workers' compensation remedy is not subject to collateral attack *(Bardere v Zafir,* 102 AD2d 422, 425, *affd* 63 NY2d 850). "To permit further adjudication of the question after the board has made an award would be inconsistent with the statutory mandate that the compensation remedy be exclusive as to the employer and that the board's decision be conclusive" *(O'Connor v Midiria, supra,* at 541).

Plaintiff also seeks to avoid the exclusivity of the workers' compensation remedy by alleging that defendants intentionally caused his injuries. Plaintiff relies on this court's decision in *Finch v Swingly* (42 AD2d 1035) in which we stated that "[w]here injury is sustained to an employee due to an intentional tort perpetrated by the employer or at the employer's direction, the Workmen's Compensation Law is not a bar to a common-law action for damages". In view of the Court of Appeals decisions in *Mylroie v GAF Corp.* (55 NY2d 893, *supra)* and *Werner v State of New York* (53 NY2d 346, *supra),*

the quoted portion of the holding in *Finch v Swingly (supra)* is no longer valid *(cf., Burlew v American Mut. Ins. Co.,* 99 AD2d 11, 13-15, *affd* 63 NY2d 412, 416-418; *Legault v Brown,* 283 App Div 303). By accepting an award of workers' compensation benefits, plaintiff forfeited his right to maintain an action at law on the theory of intentional tort. Since the Workers' Compensation Board determined that plaintiff's knee injury was accidental and occurred in the course of his employment, both issues clearly within the Board's jurisdiction, these findings are binding between the parties.

■ Martin's claims of intentional concealment and fraud against Dr. Casagrande lacks merit. Dr. Casagrande did not order or even suggest that Martin return to the ice in late December 1980. Rather, he left that decision to Martin. Martin was an All Star and key player for the Sabres. It is highly unlikely that defendants would do anything to injure him intentionally or to diminish his trade value, which proved to be substantial as evidenced by the Kings deal. Moreover, Martin himself acknowledged in deposition testimony that he knew he risked permanent damage to his right knee if he played on December 28, 1980 and that defendants did not specifically order him to play against his wishes. Thus, on this record, there is no evidence that defendants intended to harm Martin *(see, Burlew v American Mut. Ins. Co.,* 63 NY2d 412, 417-418, *supra).*

Moreover, once the court granted summary judgment to the Sabres and Bowman, it was appropriate for Dr. Casagrande to move for similar relief. If the Sabres and Bowman did not commit an intentional tort against Martin then neither did Dr. Casagrande, since he could not conspire with himself to deceive Martin. The fact that Dr. Casagrande earlier moved unsuccessfully for summary judgment (because he was Martin's coemployee), did not preclude him from moving again solely on the basis of the success of the Sabres and Bowman in their motions based on similar facts. Indeed, Dr. Casagrande's second motion was based, in part, upon the prior motion papers of the Sabres and Bowman and the court's decision granting their motion. In sum, while Martin may have a valid medical malpractice claim against Dr. Casagrande, on this record his claim of intentional tort against each defendant lacks merit as a matter of law.

Plaintiff's reliance upon *Krueger v San Francisco Forty Niners* (189 Cal App 3d 823, 234 Cal Rptr 579) is misplaced. There, the court held that where medical information was

fraudulently concealed from a football player by the team and the team physicians, the player could recover against them. The court did not discuss the exclusivity of workers' compensation because the action was based upon California law authorizing an action for fraud and deceit (see, Cal Labor Code § 3602 [b] [2]). Moreover, *Krueger* is distinguishable on the facts. There, although X rays had been taken and fully depicted the extent of the football player's degenerative condition, defendants never informed him of this result. Here, the initial X rays and arthrograms did not indicate the meniscal and ligament damage to Martin's right knee that was later discovered by Dr. Jackson.

Accordingly, the orders granting defendants summary judgment should be affirmed.

BOOMER, J. P., PINE, DAVIS and LOWERY, JJ., concur.

Orders unanimously affirmed, without costs.